| MYONG S. HUANG, | ) | DAVIDSON CIRCUIT |
| | ) | No. 96D-1893 |
| Plaintiff/Appellee | ) | |
| | ) | Appeal No. |
| v. | ) | 01A01-9709-CV-00462 |
| | ) | |
| JIMMY SHIN HUANG | ) | |
| | ) | |
| Defendant/Appellant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MYONG NAN GATES, | ) | |
| | ) | |
| Intervenor/Appellee | ) | |

FILED

April 29, 1998

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### APPEAL FROM THE DAVIDSON COUNTY CIRCUIT COURT
### AT NASHVILLE, TENNESSEE

### HONORABLE MARIETTA M. SHIPLEY, JUDGE

William B. Bruce
Bruce, Weathers, Corley, Dughman & Lyle
315 Deaderick Street, Suite 2075
Nashville, TN 37238-2075
ATTORNEY FOR DEFENDANT/APPELLANT

Mary Arline Evans
Philip W. Duer
Stanley A. Davis
214 Third Avenue North
Nashville, TN 37201
ATTORNEYS FOR PLAINTIFF/APPELLEE
AND FOR INTERVENOR/APPELLEE

### AFFIRMED AND REMANDED

WILLIAM H. INMAN, SENIOR JUDGE

CONCUR:

HENRY F. TODD, PRESIDING JUDGE, MIDDLE SECTION

BEN H. CANTRELL, JUDGE

| | | |
|---|---|---|
| MYONG S. HUANG, | ) | DAVIDSON CIRCUIT |
| | ) | No. 96D-1893 |
| Plaintiff/Appellee | ) | |
| | ) | Appeal No. |
| v. | ) | 01A01-9709-CV-00462 |
| | ) | |
| JIMMY SHIN HUANG | ) | |
| | ) | |
| Defendant/Appellant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MYONG NAN GATES, | ) | |
| | ) | |
| Intervenor/Appellee | ) | |

## O P I N I O N

In this divorce action the trial court found that Husband and Wife were both guilty of inappropriate marital conduct and granted each a divorce from the other pursuant to T.C.A. § 36-4-129. Custody of the parties' minor child, age three, was granted to Wife, who was awarded rehabilitative alimony of $500.00 per month for sixty months and alimony *in solido* of $500.00 per month which was to terminate when the note encumbering the Wife's van, in the approximate amount of $12,000.00, was paid in full. In a separate order on an intervening petition, the trial court entered judgment against Husband and in favor of Intervenor Myong Nan Gates on a Promissory Note.

Husband appeals, raising the issues of (1) award of sole custody of the child to the mother, (2) award of rehabilitative alimony, (3) award of alimony *in solido,* (4) judgment against him and in favor of the Intervenor on the note.

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d).

2

Jimmy Shin Huang ["Husband"] and Myong S. Huang ["Wife"]were married May 14, 1992 in Houston, Texas. One child, Lisa Huang, now four years old, was born of this marriage. One month later Wife and the child moved to Texas, where Wife worked in her sister's dance club while Husband remained in Tennessee for the next 18 months. He went to Texas once a month "to make money at the flea market," visit his family and obtain some of Wife's earnings. The child's paternal grandparents took the child to Taiwan for six of the 18 months, and when they returned the child to Husband in Tennessee, Wife returned from Texas to Tennessee and the family lived together briefly. The marriage failed soon thereafter; Wife alleged Husband beat her and emotionally abused her; Husband says Wife drank excessively, frequently disappeared from home, and maintained phone contact with a former boyfriend whom she had lived with briefly while she was in Texas.

Wife filed an earlier petition for divorce which was nonsuited. At the time of the nonsuit, Husband signed a promissory note for $85,000.00 to Wife's sister, Myong Nan Gates ["Intervenor"] for monies allegedly borrowed during the marriage. Wife filed this petition for divorce on June 26, 1996 and her sister filed a petition to intervene on July 19, 1996 asking the court to recognize the promissory note as a marital debt of the parties and to declare and impose a lien in her favor on any assets determined to be Husband's property.

# I

Husband appeals the award of sole custody of the parties' minor daughter to Wife, whom he characterizes as "a woman who has actively engaged in prostitution while she had the girl in her possession."

3

Award of custody is governed by T.C.A. § 36-6-106, which sets out the determinative factors: (1) emotional ties, (2) who is the primary care giver, (3) continuity, (4) stability, (5) parental health, (6) home, school and community records, (7) child's preference (if older), (8) evidence of physical or emotional abuse, and (9) character and behavior of other persons associated with parents. The best interest of the child is the paramount consideration. *Bah v. Bah,* 668 S.W.2d 663 (Tenn. App. 1983).

The parties' child was born in Tennessee and accompanied her mother to Texas when she was one month old. During their 18 months' stay, the mother worked as a nightclub dancer, was arrested and subsequently convicted of prostitution. Wife testified that her conviction was due to her involvement in a business in which others were prostitutes, but that she was not involved in sexual misconduct. Further, that her husband had encouraged her to continue the job, insisting she return to Texas and her work at the nightclub to make more money. Husband testified that he knew she was working at her sister's club but denied any knowledge of prostitution and testified that he discovered a court document in Wife's purse charging prostitution, hired a private detective, and thereby learned the source of Wife's income.

The child has been in her mother's physical custody for all of her life except for a six month visit to Taiwan with grandparents. Husband's very emotional testimony about his love and for his child was persuasive; however, the evidence indicates his business responsibilities have required that most or all of the child's care be provided by her mother.

Wife alleged incidents of Husband's physical and emotional violence against her and one incident in which he beat the child with a stick, which

4

Husband denied. The parties were ordered by the court to attend a class on helping the child deal with their divorce, and Husband failed to attend until a show cause order was entered.

The trial court awarded custody to the mother with liberal visitation to the father, and further ordered that (1) if she desires to take the child out of Tennessee for more than one month she must apply to the Court for permission, and (2) she is restrained from working at the club formerly owned by her sister in Texas, and from being around people in that business, when the parties' minor child is in her possession.

We find the preponderance of the evidence supports the trial court's custody order.

## II

Husband contends the award of rehabilitative alimony was improper because Wife failed to show any intent or capacity for training that would increase her earning capacity.

T.C.A. § 36-5-101(d) provides factors to determine whether rehabilitative alimony is appropriate: (1) resources, earning capacities and needs of the parties, (2) education/training necessary to improve earning capacity, (3) duration of the marriage, (4) age and health of the parties, (5) presence of a minor child in the home, (6) separate assets of each party, (7) property settlement, (8) standard of living during the marriage, (9) tangible and intangible marital contributions of the parties, (10) relative fault of the parties, (11) other equitable factors.

Husband in this case had business assets of $194,000.00, wages of $35,800.00 in 1996 from his business, and gambling income from Tunica,

Mississippi in 1995 of $67,505.00.  Wife had a 1996 gross weekly salary of $200.00 from her job in a dry cleaners.  She testified that she needs schooling in the English language and that her ability to earn a good income is limited by her child-care responsibilities.

We find the preponderance of the evidence supports the trial court's award of rehabilitative alimony to Wife.

### III

Husband appeals the award of alimony *in solido* on grounds that despite its designation, the award had the effect of giving Wife the parties' Toyota Previa van and burdening Husband with the associated debt.   He argues that when practicable, the debts should follow the assets they purchased, citing *Mondelli v. Howard,* 780 S.W.2d 769 (Tenn. App. 1989), and that the trial court abused its discretion in failing to follow this equitable principle.

The criteria for allocating marital debts are:  (1) which party incurred the debt, (2) the purpose for which the debt was incurred, (3) which party benefited from the debt, and (4) which party is best off to assume the obligation to repay the debt.  *Mondelli, supra.*

The trial court's judgment provides:

"14.  That the Husband should pay alimony *in solido* to the Wife in the sum of $500.00 per month, commencing March 15, 1997, with a like amount due on the 15th day of every month thereafter, and which should terminate when the note encumbering the Wife's van, in the approximate amount of $12,000.00, is paid in full, and which should not be subject to further modification or termination by the Wife's death or remarriage;

15.  That the Wife should be awarded the Toyota Previa van and the Husband should be awarded the Dodge truck, and that each party should be solely responsible for the notes encumbering their respective vehicles, and indemnify and hold each other harmless thereon;"

The evidence is abundant that Husband has the ability to earn a substantial income from his business and other ventures, while Wife's monthly earnings as a dry cleaning worker are completely inadequate for her support. We find the trial court did not abuse it discretion in awarding the van and alimony *in solido.*

## IV

Finally, Husband appeals the separate order by the trial court which entered judgment against him and in favor of Intervenor Myong Nan Gates on a promissory note.

The Intervenor alleged in her petition that she and other family members had loaned Husband various sums of money throughout the marriage, most of which was used by Husband for his business ventures. As the parties' marriage deteriorated, Intervenor became concerned about repayment of these loans and, on March 20, 1996, obtained a promissory note for $85,000.00 from Husband secured by a Deed of Trust on his business property. Three months later Wife filed this action for divorce. Intervenor sought the Court's recognition and protection of her interest.

Husband answered that he signed the note because of his Wife's threat to prevent his visitation with their child, and that his total indebtedness to his sister-in-law was only $41,000.00, with a balance of approximately $35,000.00 at the time he signed the note. However, Exhibit 11 to his deposition is his handwritten note containing the following names and numbers, which Wife says is his calculation of his debts:

| Sister | 85,000.00 |
| Credit | 20,000.00 |

| | |
|---|---|
| Mr. Taylor | 70,000.00 |
| Uncle | 45,000.00 |
| | 220,000.00[1] |

Husband admitted writing the note but denied that the $85,000.00 figure had any particular significance and continued to insist his debt to his sister-in-law was never more than $50,000.00.

The trial court found:

" . . . that there is no specific defense of fraud or duress alleged by [Husband] nor any allegation to reflect that [Husband] was forced to sign the Note upon a threat, physical or psychological harm, or that his name was forged or any of the major defenses to a contract action. The Court finds that the Note was very clear in its terms and there were no ambiguities and nothing to indicate that the terms of the Note were difficult to understand. The Court therefore will not hear any evidence as to the Note or to any amounts paid prior to the date of execution of the Note."

The court entered a separate judgment for Intervenor for $85,000.00 less $2,500.00 Husband paid to Intervenor after its execution. Husband had also paid into the Clerk's Registry $23,918.00 from the sale of other real property, which the court released, with the acquiescence of Husband, to Intervenor in partial satisfaction of the judgment. The court found the balance owing by Husband to Intervenor to be $58,582.00 and ordered that the lien against Husband's business property which secured the promissory note should remain in effect, subject to a pre-existing first mortgage to Mr. Brown Taylor.

Husband contends he sufficiently pled the affirmative defense of duress, and if not, he should have been allowed to amend his answer under T. R. C. P. 8.03 and present evidence that his debt to Intervenor was substantially less.

---

[1]Husband's testimony indicated he had credit card debt of approximately $20,000.00, owed a first mortgage of $70,000.00 on his business property to Mr. Brown Taylor and his wife Sammie Taylor, and owed $45,000.00 to his uncle for a loan he obtained to purchase inventory for his business.

Wife says the trial court correctly applied T. R. C. P. 12.06 and struck his insufficient defense.

We find no motion to amend or for leave to make an affirmative defense. At best, Husband says only that he did not owe the aggragated indebtedness of $85,000.00 at the time he executed the note and Deed of Trust. His explanation therefor was the claimed threat that if he did not execute the note, visitation privileges would be withheld. This is hardly duress; moreover, he later acknowledged an indebtedness of $85,000.00 to an unnamed creditor.

Husband argues that the case should be remanded to allow him the opportunity to produce evidence that he did not owe his sister-in-law $85,000.00 at the time he executed the note to her; but the pleadings do not admit of this recourse, since appellant offered no affirmative defenses to the note which he admits he executed and the parol evidence rule becomes an insurmountable obstable.

The judgment of the trial court is affirmed with costs assessed to the appellant.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Henry F. Todd
Presiding Judge, Middle Section


_____
Ben H. Cantrell, Judge